SCHEDULED FOR ORAL ARGUMENT ON FEBRUARY 6, 2015

———————————

No. 14-8001

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

IN RE: DISTRICT OF COLUMBIA,
PETITIONER.

———————————

ON PETITION FOR PERMISSION TO APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————

**REPLY BRIEF FOR PETITIONER DISTRICT OF COLUMBIA**

———————————

EUGENE A. ADAMS
Interim Attorney General
for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 727-6287
loren.alikhan@dc.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. *Parties and amici.*—Plaintiffs named below in the third amended complaint are Jacqualyn Thorpe, Donald Dupree, Roy Foreman, Larry McDonald, Curtis Wilkerson, Lavondia Carter, Robert Collins, Winifred Goines, Joseph Gray, Carl Magby, and Denise Rivers. During the pendency of this action, plaintiffs filed a Suggestion of Death as to plaintiff Lavondia Carter and voluntarily dismissed the claims of Carl Magby and Winifred Goines due to their deaths. Record Document ("RD") 105, 121, 130.

The district court certified the following class:

All persons with physical disabilities who, now or during the pendency of this lawsuit:

(1) receive DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days;

(2) are eligible for Medicaid-covered home and community-based long-term care services that would enable them to live in the community; and

(3) would prefer to live in the community instead of a nursing facility but need the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community.

Joint Appendix ("JA") 1256.

Defendant below and petitioner here is the District of Columbia.

The Legal Aid Society of the District of Columbia, Bread for the City, the Center for Public Representation, the National Disability Rights Network, the

i

National Health Law Program, and the National Senior Citizens Law Center jointly filed a brief as *amici curiae* in support of respondents.   The United States Department of Justice, Civil Rights Division, filed a Statement of Interest with respect to the class certification motion, JA 1078-98, but did not appear before this Court.

      B. *Rulings under review*.—The rulings of the district court (Huvelle, J.) at issue are the order and opinion of March 29, 2014, JA 1200-55; JA 1256-57, which are not reported at this time, although the opinion is available at 2014 WL 1273134.

      C. *Related cases*.—There are no related cases of which the District is aware.

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ...................................................................1

ARGUMENT .........................................................................................2

    I.     Rule 23(f) Review Is Warranted. ...........................................2

    II.    On The Merits, The Class Certification Decision Cannot Stand. .........5

        A.    Respondents' contention that Rule 23(a)(2) and (b)(2) can be satisfied by the mere assertion of a "failure to effectively provide transition assistance" is plainly incorrect. ..................................................................5

            1.    The "singular failure" theory, as applied in this case, contravenes *Wal-Mart* and *D.L.* ..............................6

            2.    If countenanced, the "singular failure" theory would render Rule 23(a)(2) and (b)(2) effectively meaningless in cases challenging government administration of complex programs, and raises federalism and separation-of-powers concerns. .............10

        B.    Respondents' remaining arguments are unavailing. .................12

CONCLUSION .....................................................................................19

iii

# TABLE OF AUTHORITIES*

## *Cases*

*Bynum v. District of Columbia*, 217 F.R.D. 43 (D.D.C. 2003) ................................15

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ............................3, 4

*Connor B. ex rel. Vigurs v. Patrick*, 27 F.R.D. 30 (D. Mass. 2011)........................15

*\*D.L. v. District of Columbia*,
   713 F.3d 120 (D.C. Cir. 2013)....................................... 2, 3, 6, 8, 9, 10, 15, 16, 18

*Horne v. Flores*, 557 U.S. 433 (2009)......................................................................11

*Houser v. Pritzker*, 2014 WL 2967446 (S.D.N.Y. July 1, 2014) ............................15

*In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014).............................................................3

*\*In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98 (D.C. Cir. 2002) .....2

*In re Rail Freight Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013) ...........3

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ......... 16, 17

*J.B. v. Valdez*, 186 F.3d 1280 (10th Cir. 1999)..................................................10, 11

*Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012).............................10

*Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*,
   293 F.R.D. 254 (D.N.H. 2013)..............................................................................12

*Lane v. Kitzhaber*, 283 F.R.D. 587 (D. Ore. 2012) .................................................14

*Lee v. Dudek*, No. 08-CV-26 (N.D. Fla. Jan. 3, 2012)...............................................5

---

\*     Authorities upon which we chiefly rely are marked with asterisks.

*Lightfoot v. District of Columbia*, 273 F.R.D. 314 (D.D.C. 2011)............................9

*M.D. v. Perry*, 294 F.R.D. 7 (S.D. Tex. 2013)...........................................................15

*Martin v. Taft*, 222 F. Supp. 2d 940 (S.D. Ohio 2002)..............................................17

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012)...............7

*Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013) ...........................................15

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .........................................................15

*Prado-Steinman v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ..........................................4

*Randleman v. Fid. Nat'l Trust Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) ......................7

*Rolland v. Patrick*, 562 F. Supp. 2d 176 (D. Mass. 2008) .......................................17

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).........2, 6, 8, 12, 14, 16, 18

*Rules*

Rule 23(a)(2) ...................................................................1, 5, 6, 10, 11, 12, 18

Rule 23(a)(3) ................................................................................... 1, 5, 16, 17

Rule 23(b)(2)................................................................ 1, 5, 6, 7, 10, 11, 12, 15, 16

Rule 23(f) ............................................................................. 1, 2, 3, 4, 5, 6, 12, 19

## SUMMARY OF ARGUMENT

This Court should grant the District's petition under Federal Rule of Civil Procedure ("Rule") 23(f) and vacate the order certifying the class. The Court has recognized that Rule 23(f) review is appropriate where, as here, the underlying class certification order is manifestly erroneous, and granting review now will conserve judicial and party resources.

On the merits, the class certification decision must be vacated because the respondents cannot satisfy Rule 23(a)(2) & (3) and Rule 23(b)(2). Respondents' principal contention is that the district court identified a common harm—the District's alleged failure "to provide effective transition services from nursing facilities to the community"—capable of resolution through a single injunction. But the alleged harm is not common at all because the putative class members allege different ways in which they failed to receive transition assistance and different agencies purportedly responsible, and, indeed, because many putative class members remained in nursing facilities for reasons having nothing to do with the District. Moreover, given the varied nature of the alleged harms, the named plaintiffs' claims are not typical of the class, failing Rule 23(a)(3), and the relief sought is inherently individualized, failing Rule 23(b)(2). Certifying a class of this sort runs afoul of settled precedent. The certification decision should be vacated.

## ARGUMENT

### I.     Rule 23(f) Review Is Warranted.

This Court should grant Rule 23(f) review because the class certification decision below was manifestly erroneous for the reasons explained in the District's opening brief.  District Br. 18-34.  Moreover, this Court in its discretion can recognize that allowing immediate review would prevent delays in resolving this case and avoid an unnecessary waste of judicial and party resources while the district court considers liability based on an improperly certified class.  District Br. 16-18.  Rather than countenance that delay and waste, especially where the district court failed to heed both the Supreme Court's precedent in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and this Court's decision in *D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013), this Court should allow interlocutory review under Rule 23(f).

In arguing against review, respondents make much of the fact that this Court has not previously granted a Rule 23(f) petition for manifest error.  Thorpe Br. 12.  But this Court has expressly recognized that manifest error ordinarily justifies 23(f) review.  *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002).  It has considered relatively few 23(f) petitions compared to its sister circuits—respondents cite only six petitions alleging manifest error since the addition of Rule 23(f) in 1998, Thorpe Br. 12—and even still, the Court has not

hesitated to grant Rule 23(f) review where appropriate in other circumstances, *see In re Rail Freight Surcharge Antitrust Litig.*, 725 F.3d 244, 250-51 (D.C. Cir. 2013).

Moreover, that this Court has declined to grant review for manifest error in other cases presenting very different factual circumstances does not mean Rule 23(f) review is not appropriate here. This is especially so because, when confronted with a similar class action alleging disparate deficiencies in the administration of a District program, this Court vacated the certification decision. *D.L.*, 713 F.3d at 129. *D.L.* arose as an interlocutory appeal from an order granting an injunction, rather than a petition for Rule 23(f) review, but the Court there concluded that a class cannot be certified on the mere allegation that the District is failing its legal obligations "in the absence of a uniform policy or practice that affects all class members." *Id.* at 129. Because *D.L.* was important and established precedent at the time the district court considered the class certification motion here, the error in certifying this class should have been apparent to the district court, and it is manifest now, justifying exercise of this Court's discretion under Rule 23(f). *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (recognizing that Rule 23(f) review generally is warranted where "district court applies an incorrect Rule 23 standard or ignores a directly controlling case"); *see also In re Johnson*, 760 F.3d 66, 72 (D.C. Cir. 2014) (citing *Chamberlan*).

3

Respondents next attempt to distinguish cases in which courts have granted Rule 23(f) review on their facts, Thorpe Br. 13 (citing cases), but the principle emanating from the cases—that 23(f) review is warranted where the district court misapplies the standards for class certification—applies with equal force here. Indeed, respondents admit that Rule 23(f) review is appropriate when the district court commits "a plainly apparent error of law, such as a failure to … apply directly controlling circuit precedent." Thorpe Br. 13. That is precisely what happened here when the district court granted certification despite the clear mandates of *Wal-Mart* and *D.L.* to the contrary.

Finally, respondents argue that considerations about judicial economy and conservation of party resources have no place in the Rule 23(f) inquiry. Thorpe Br. 18. Not so. Rule 23(f) expressly gives the courts of appeal "discretion" in deciding whether to grant petitions for review. And a central tenet of Rule 23(f) review for manifest error is that appellate courts "see no reason for a party to endure the costs of litigation when a certification decision is erroneous and inevitably will be overturned." *Chamberlan*, 402 F.3d at 959; *see also Prado-Steinman v. Bush*, 221 F.3d 1266, 1274-75 (11th Cir. 2000) ("[Rule 23(f)] review may be appropriate when it promises to spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed by this Court on an appeal after final judgment.").

4

Respondents also maintain that the district court's ability to "revisit[]" the class certification decision obviates the need for Rule 23(f) review. Thorpe Br. 18 (discussing *Lee v. Dudek*, No. 08-CV-26 (N.D. Fla. Jan. 3, 2012) (class decertified post-trial)). Certainly that cannot be the case or Congress would not have added Rule 23(f)'s interlocutory-review provision in 1998. And where, as here, the original class certification decision is erroneous, there is no reason that the District should wait to see if the district court corrects itself, when this Court is well situated to remedy the certification error on interlocutory review.

## II.   On The Merits, The Class Certification Decision Cannot Stand.

### A.   Respondents' contention that Rule 23(a)(2) and (b)(2) can be satisfied by the mere assertion of a "failure to effectively provide transition assistance" is plainly incorrect.

Respondents' principal argument in support of the class certification decision is that Rule 23 is satisfied by their assertion of a "singular failure to effectively provide transition assistance." Thorpe Br. 27; *see also* Thorpe Br. 21 (alleging "one harm," which is "[t]he failure of the District of Columbia to provide effective transition services from nursing facilities to the community"); Thorpe Br. 33-34 (similar). But, as the District explained in its opening brief, respondents' "singular failure" argument ignores the fact that the putative class members have entirely different reasons why they think the District failed in this regard, and thus their main argument for class certification contravenes the language and reasoning

5

of the Supreme Court's decision in *Wal-Mart* and this Court's decision in *D.L.*  It would also lead to untenable results for large-scale government programs and raise federalism and separation-of-power concerns.  For these reasons, the Court should grant the 23(f) petition and vacate the class certification decision.

> 1.  The "singular failure" theory, as applied in this case, contravenes *Wal-Mart* and *D.L.*

*Wal-Mart* held that Rule 23(a)(2) requires a showing of "a common contention … capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," and further that Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  131 S. Ct. at 2551, 2557.  Respondents err in arguing that the district court met these requirements by identifying a "singular failure to effectively provide transition assistance."  Thorpe Br. 27.

The District explained in its opening brief that the asserted failure to provide transition assistance is not a uniform policy because (1) there is no assertion that the District *always* fails to meet the requirements for effective transition assistance or has a policy of failing to do so; and (2) there is no singular agency that is alleged to have failed or any singular mechanism of alleged failure, but rather three separate agencies that are alleged to have failed in many different ways.  District Br. 21-22.  Respondents' attempts to defend the class certification are unavailing.

6

Respondents and their *amici* contend that there is no requirement that "in the absence of an affirmative policy an entity must *always* fail to abide by the law" in order for a class to be certified. Thorpe Br. 22; *see also Amici Br.* 20. But there is such a requirement: the commonality standard in Rule 23(b)(2). Class actions are designed to permit individuals who have been similarly aggrieved by a particular policy or practice to join their claims together. If an entity has met its obligations to one set of plaintiffs but not to another, then the claims of the plaintiffs are lacking commonality and cannot be brought as a class action. And respondents cannot escape this basic principle of class-action law by defining their class to include only those individuals alleged to have been failed by the District, because, as the District explained in its opening brief (at 22 n.1), that would be an improper fail-safe class. *Randleman v. Fid. Nat'l Trust Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).[1] The named plaintiffs' identification of a "singular failure" thus is no more than a definitional game: because the certified class is *defined* to include just those

---

[1]      Respondents argue that a class of only those individuals aggrieved by the District is not a fail-safe class because "resolving this litigation will not 'require a court to decide the merits of prospective individual class members' claims to determine class membership." Thorpe Br. 23 n.5 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825-26 (7th Cir. 2012)). But that is precisely what respondents are asking the Court to do. They concede there is no affirmative policy of failing to provide transition assistance, and they concede that the District does not "*always* fail to abide by the law." Thorpe Br. 22. That means one can only discern who is properly part of the class by identifying the plaintiffs who will succeed on the merits—the very definition of an improper fail-safe class.

7

who have suffered some failure, the circular "common contention" they proffer is that people who have been failed have uniformly been failed.

Respondents similarly misunderstand the District's argument as requiring a policy "that explicitly endorses the District's failure to provide effective transition assistance." Thorpe Br. 22. The District has never argued as much. Instead, it is the District's position that under *Wal-Mart* and *D.L.*, there must be "some glue holding the alleged *reasons* for all [the challenged actions] together," because otherwise "it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." 713 F.3d at 127 (quoting *Wal-Mart*, 131 S. Ct. at 2552). That glue could be a particular policy that fails all class members in the same way, or it could be a particular failure to implement a specific service that would benefit the putative class members. Thus, the District readily recognizes that if respondents had alleged a particular omission in the transition assistance protocol (for example, if the District required individuals to reside in nursing facilities for 180 days instead of the required 90 in order to qualify for the "Money Follows the Person" program), that might provide the requisite commonality for class treatment.[2]

---

[2]     This is precisely the type of class contemplated in Judge Edwards's concurrence in *D.L.*, 713 F.3d at 130.

8

Respondents did not design their class to address a singular failure, but instead to try to reform multiple programs across multiple agencies. Where there are numerous alleged failures, which may have harmed different plaintiffs differently, commonality is lacking and class certification is not appropriate. An assertion that the District failed to meet some requirements for transition assistance with regard to a class of people does not provide the "glue" the Supreme Court required, especially where respondents do not dispute that there are three different agencies that could be responsible for the asserted failure and a variety of ways in which they might have done better. *See Lightfoot v. District of Columbia*, 273 F.R.D. 314 (D.D.C. 2011) ("Plaintiffs … seek to conflate a wide variety of practices and impute them to the class as a whole by collecting them under a single, unilluminating umbrella of 'systemic' failures.").

In this way, respondents draw the wrong conclusion from *D.L.* Thorpe Br. 22-23. They acknowledge that in *D.L.* this Court identified discrete categories of potential failures by the District "to have an effective intake and referral process"; "to offer adequate and timely education placements"; and to provide "smooth and effective transition from early intervention programs to preschool programs." *D.L.*, 713 F.3d at 128. But respondents fail to appreciate that the *D.L.* Court *vacated* a decision certifying the class alleging these discrete types of harms. *Id.* ("[T]he plaintiffs' claims appear to be based on multiple, disparate failures to

9

comply with the [District's] statutory child find obligations rather than a truly systemic policy or practice which affects them all…." (quoting *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 504-05 (7th Cir. 2012) (alterations in *D.L.*))). The Court explained that these discrete types of failures *might* allow for the certification of subclasses (which the district court then certified on remand).  *Id.* (in alleging subclasses, "the plaintiffs were suggesting that they could show as to each subclass that the harm caused by the District's failures stemmed from a policy or practice that would provide a basis for the requested injunctive and declaratory relief").  While the District continues to believe in *D.L.* that the certification of subclasses there did not cure a lack of commonality, at the very least the district court here could have divided the class into subclasses that each focused on a discrete alleged failure to provide a type of transition assistance.  Without even that nod toward achieving commonality, the class certification decision cannot stand.

> 2.   If countenanced, the "singular failure" theory would render Rule 23(a)(2) and (b)(2) effectively meaningless in cases challenging government administration of complex programs, and raises federalism and separation-of-powers concerns.

The theory that a "singular failure" warrants class certification not only conflicts with binding precedent, but also leads to unacceptable results.  Even before *Wal-Mart*, class proponents could not simply label failures "systemic" without identifying something more linking why all the class members were failed. *E.g.*, *J.B. v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (affirming denial of class

certification where "the circumstances of these children vary greatly. Other than all being disabled in some way and having had some sort of contact with New Mexico's child welfare system, no common factual link joins these plaintiffs."). It could not be, for instance, that all those denied benefits under a local agency's unemployment compensation system could, without more, satisfy Rule 23(a)(2) and (b)(2). Yet that is what respondents propose: define a class of those who are failed by a system and then assert a "uniform" practice of failure.

Acceptance of such a proposal would effectively nullify Rule 23(a)(2) and (b)(2) in cases challenging government administration of complex programs. Even the best-run agency may fail to meet statutory requirements at some times. Especially after *Wal-Mart*, it cannot be that a class action will lie where no particular policy or practice of the agency can be faulted—yet that is the view of Rule 23(a)(2) and (b)(2) on which this class certification order depends.

Respondents' expansive view of Rule 23 also would raise federalism and separation-of-powers concerns. *See Horne v. Flores*, 557 U.S. 433, 448-49 (2009). Federal courts are poorly suited to the management of state executive agencies and programs, and Rule 23(a)(2) and (b)(2) serve to ensure that class actions are limited to the adjudication of concrete disputes based on truly common questions of law or fact, rather than being used as vehicles for takeovers of broad government programs that conceivably could be better run. Respondents' contrary

11

view that Rule 23 can be used to vest federal courts with broad authority to oversee the District's programs is manifestly erroneous, and the district court's endorsement of it requires Rule 23(f) review and vacatur of the certification decision.

### B.     Respondents' remaining arguments are unavailing.

After respondents' theory—that the allegation of a singular failure to effectively provide transition assistance satisfies Rule 23(a)(2) and (b)(2)—is debunked, their remaining arguments fail as well.

 *First*, respondents argue that certification is appropriate here because courts have granted class certification in other civil rights cases, including *Olmstead* cases.  Thorpe Br. 23-24; 24-25.  But the issue is not whether class certification is *ever* an appropriate means to challenge a government program, but whether the class as proposed by respondents provides an appropriate vehicle to aggregate a multiplicity of disparate challenges in this case.  It does not.

Respondents discuss at length a decision by the federal district court in New Hampshire to certify an *Olmstead* class after *Wal-Mart*.  Thorpe Br. 24-25 (citing *Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254 (D.N.H. 2013)).   But, as the District has already explained, *Kenneth R.* is readily distinguishable.  District Br. 23.  That case concerned harms stemming from one single, and singular, issue: underfunding.  Here, in contrast, respondents allege

12

varied and various issues undergirding the supposed "singular failure to effectively provide transition assistance."  There are various reasons why an individual who wishes to return to the community might remain in a nursing facility, some of which may be attributable to the District, and some of which may be entirely independent of the District.  For example, the individual might not have received appropriate information about transition assistance from the District agencies responsible for providing it.  Or she may have received information about the various programs, but the programs may have been at capacity and unable to accommodate her.  Or the District may have provided assistance flawlessly, but the individual simply lacks a home in the community to which she can return, "and it is agreed that the [district court] cannot order the District to provide housing." Joint Appendix ("JA") 1225-26; *see also* District Br. 26.  Given the varied reasons why individuals might remain in nursing facilities despite a desire to return to the community, the various District agencies responsible for providing transition assistance as defined by respondents and the district court, and the varying potential culpability of the District with respect to any particular individual in a nursing facility, there is simply no common contention capable of classwide resolution.

*Second*, respondents and their *amici* contend that the involvement of numerous District agencies in the provision of transition assistance does not

undermine a finding of commonality.  Thorpe Br. 25-27; *Amici* Br. 9.  But given *Wal-Mart*'s concern that putative class members' claims for relief "produce a common answer to the crucial question *why was I disfavored*," 131 S. Ct. at 2552, class certification is not appropriate where, as here, the discrete actions of different District agencies performing different functions will necessarily produce different answers to that crucial question.  Again, if this were a case where the relevant District agencies were administering the program in a uniformly erroneous way, such as miscalculating eligibility for the Money Follows the Person program, then it would be a candidate for class certification because there was a common answer to the "crucial question."  But respondents have made no such allegation in this case.  Especially with large-scale government programs that require the involvement and input from various stakeholders across the District (and even federal) government, it is incumbent on the putative class to point to a common harm caused by a common adversary in order to satisfy Rule 23.[3]

---

[3]      Respondents make much of the fact that the district court in Oregon in *Lane v. Kitzhaber*, 283 F.R.D. 587 (D. Ore. 2012), certified a class concerning alleged failures in the employment services provided to disabled individuals even though two different government entities were involved.  Thorpe Br. 25-26.  But even assuming that court had the law right, those entities were two different divisions of the *same agency*—the Oregon Department of Human Services.  Here, in contrast, there are three distinct agencies performing different functions involved in providing transition assistance in the District: the Department of Health Care Finance, the Office on Aging, and the Department of Behavioral Health.

14

*Third*, respondents argue that they are seeking a "one stroke injunction," even though the District demonstrated in its brief that the injunctive relief sought was varied and multi-faceted. District Br. 32-34. Respondents quote language from *Moore v. Napolitano*, 926 F. Supp. 2d 8, 29 (D.D.C. 2013) for the notion that "[f]actual variations among the class members will not defeat the commonality requirement," Thorpe Br. 27, but they omit the remainder of the sentence, "*so long as a single aspect or feature of the claim is common to all proposed class members*," *Moore*, 926 F. Supp. 2d at 29 (emphasis added) (quoting *Bynum v. District of Columbia*, 217 F.R.D. 43, 46 (D.D.C. 2003)). Where, as here, there is no common aspect or feature of the claim, the individualized injunctive relief sought by respondents cannot satisfy Rule 23(b)(2).

Recognizing weakness in their "one stoke injunction" argument, respondents argue that classwide injunctive relief can still be appropriate even if class members are "not affected by the remedy in the exact same way." Thorpe Br. 29 (internal quotation marks omitted). Respondents cite a series of cases from other jurisdictions in support of this argument, Thorpe Br. 29-32 (citing, *inter alia*, *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014); *Houser v. Pritzker*, No. 10-CV-3105, 2014 WL 2967446 (S.D.N.Y. July 1, 2014); *M.D. v. Perry*, 294 F.R.D. 7 (S.D. Tex. 2013); *Connor B. ex rel. Vigurs v. Patrick*, 27 F.R.D. 30 (D. Mass. 2011)). But respondents fail to grapple with the precedent from this Court in *D.L.*

15

that "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  713 F.3d at 125 (quoting *Wal-Mart*, 131 S. Ct. at 2557).  Even if courts in other jurisdictions may have relaxed that requirement in contravention of *Wal-Mart*, this Court has not.  Rule 23(b)(2) injunctions must be indivisible, not individualized, and the injunctive relief sought here cannot meet that strict standard.

*Fourth*, respondents argue that the claims survive Rule 23(a)(3)'s typicality analysis, Thorpe Br. 32-35, but even the district court acknowledged that typicality was "not free from doubt."  JA 1246.[4]  The typicality analysis "properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to

---

[4]      Respondents take issue with a typographical error in which the District inadvertently omitted the word "any" from a quotation of the district court's opinion.  Thorpe Br. 33 n.7.  But the District's error actually painted a more favorable picture for respondents of the district court's typicality analysis.  The district court explained that "[t]here is no question that if the 'specific discriminatory practice' of 'lack of transition assistance' were defined any more narrowly, it is unlikely that named plaintiffs' claims would be typical."  JA 1246 n.61.  This means that in the district court's view, respondents could satisfy Rule 23(a)(3) only by referring to "effective . . . transition assistance" in vague rather than specific terms, and that if they were put to their burden of defining the concept "any more narrowly"—even just a little bit—they would fall short of Rule 23(a)(3).

16

which the proposed representative may face significant unique or atypical defenses to her claims." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597-98 (3d Cir. 2009).  But, because respondents did not identify a specific practice by the District that injured the putative class members in the same manner, they did not satisfy Rule 23(a)(3)'s typicality requirement.

Respondents rely on the district court's citation to *Olmstead* cases that refer to "transition assistance" as if those cases establish what the term means for purposes of typicality.  Thorpe Br. 34 (citing JA 1246-48).  But the cases cited therein are all district court cases resolved through settlement agreements before the typicality of "transition assistance" could be vetted by an appellate court.  The same is true of the remaining cases respondents cite on appeal.  Thorpe Br. 34 (citing *Rolland v. Patrick*, 562 F. Supp. 2d 176, 179 (D. Mass. 2008); *Martin v. Taft*, 222 F. Supp. 2d 940, 959 (S.D. Ohio 2002)).  *Rolland* was another case that ended in a settlement agreement, and *Martin* concerned a class that had already been certified and the court thus did not in the cited opinion consider the typicality of a claim for transition assistance.  But even if the transition assistance at issue in those cases could survive Rule 23(a)(3)'s typicality requirement, it cannot here, where different respondents allege distinct failures in the transition services offered or denied to them.

17

*Finally*, respondents disagree that the district court erred in failing to consider the fact that the District is not obligated to provide housing as part of the commonality inquiry.  Thorpe Br. 35-37.  As the District explained in its opening brief and also noted above, the most prevalent obstacle preventing putative class members from returning to the community is a lack of housing—a factor over which the District has no control, as the district court acknowledged.  JA 1225-26; District Br. 27; *see supra* 13.  The housing issue defeats commonality, given that so many of the named plaintiffs—to say nothing of the putative class as a whole—attribute their extended placement in nursing facilities to a lack of affordable housing rather than any failure to provide transition assistance by the District's agencies.  District Br. 27-28.

Respondents argue that they "need not prove causation at the class certification stage," Thorpe Br. 35, but this misses the point.  "Given *Wal-Mart*'s interpretation of Rule 23(a) commonality, the requested relief must respond, at least in part, to a common harm suffered as a result of a policy or practice that affects each class member."  *D.L.*, 713 F.3d at 128.  If the "common harm" is a lack of adequate housing—for which the District has no responsibility or control—then the requested relief of "effective transition assistance" will not respond to, let alone remedy, any harm allegedly caused by the District.

18

## CONCLUSION

This Court should grant the petition for interlocutory review under Rule 23(f) and vacate the district court's class certification decision.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General
for the District of Columbia

TODD S. KIM
Solicitor General

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
Deputy Solicitor General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
December 2014          (202) 727-6287

19

## CERTIFICATE OF SERVICE

I certify that on December 30, 2014, electronic copies of this brief were served on all parties registered through the Court's CM/ECF system.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN

## CERTIFICATE OF COMPLIANCE

I further certify that this reply brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 4496 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman 14 point.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN